[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR CONTEMPT #121 MOTION FOR CONTEMPT #122
The parties in this matter were married on June 10, 1972 and had two minor children: Dominic, born September 1, 1977, and Cushman, born June 29, 1981. The marriage of the parties was dissolved on March 25, 1983. The judgement required the Plaintiff Husband to pay certain obligations: He was ordered to pay child support for the support of the two minor children in the amount of $70.00 per week. He was also ordered to assume full responsibility for a second mortgage on the marital residence in the amount of $7500.
The plaintiff has filed two motions for contempt regarding these financial obligations. The first motion alleges that the defendant failed to pay child support as ordered by the court on March 25, 1983. The second motion alleges the defendant failed to pay the second mortgage obligation.
The court heard testimony and evidence on these issues. The court finds the following facts to be most credible:
From the date of dissolution of the marriage the defendant failed to establish any contact with the minor children. He indicated that he attempted on four occasions between 1983 and 1985 to contact the plaintiff by letter to attempt to schedule visitation with his children. His testimony was that his efforts were ignored by the plaintiff.
In that period of time he failed to pay any of the court ordered child support to the plaintiff. In fact, in one letter, (Plaintiff's Exhibit 4), the defendant acknowledges that as of that date (October 29, 1984) he had made no child support payments to the plaintiff. He also acknowledged that once he completed his schooling he would be in a better position to take on the child support obligation. CT Page 11030
The facts indicate that on Memorial Day Weekend in 1985, the defendant did seek out the plaintiff and found her with the children at the Washington Beach Club located at Lake Waramaug in Connecticut. The parties testimony is that the encounter lasted no more than a couple of minutes. Upon seeing the defendant, the plaintiff asked that he leave and that she wanted nothing to do with him. He honored her request and left. In the process of leaving, the defendant also encountered the plaintiffs new husband. This meeting lasted about one minute, where Mr. Gillen (the plaintiffs new husband) advised the defendant to not come around again and disturb the plaintiff or else the defendant would suffer the consequences.
From that time until 1988, no further contact was made between the parties.
In 1988, the plaintiff, through correspondence with the defendant's parents, attempted to contact the defendant regarding his agreeing to termination of his parental rights to the children. The defendant responded that he did not agree. (See, Plaintiff's Exhibit 3.)
The next contact between the parties took place in 1993, when plaintiff had located the defendant by coincidence in Rhode Island. She had an attorney write him regarding termination of the defendant's parental rights and adoption of the children by Mr. Gillen. (See, Defendant's Exhibit 3.) The defendant agreed to the termination of his parental rights on March 23, 1993. (See, Defendant's Exhibit 4.) The termination of his parental rights to the children took place on July 25, 1993.
From date of dissolution of the marriage, March 25, 1983 to July 25, 1993, the defendant made no child support payments to the plaintiff.
The plaintiff now seeks to have the defendant held in contempt for failure to pay the court awarded child support.
The defendant claims that he is not obligated to pay child support and relies on the defenses of equitable estoppel, laches, and waiver.
The crux of the defendant's defenses relies on the meeting between the parties which took place on Memorial Day Weekend in 1985. The defendant argues that as a result of the verbal exchange between the parties, the defendant relied on the plaintiffs statement that neither she nor the children wanted to see him and that they did not need him in any way. Therefore, based upon this one encounter the defendant claims the defenses of equitable estoppel, laches, and waiver would apply to his obligation to pay child support. CT Page 11031
The court will review each of these defenses based upon the facts as found.
In Bozzi v. Bozzi, 177 Conn. 232 (1979), the court stated the law in Connecticut on equitable estoppel as follows:
 Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, . . . as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse. . . . Its two essential elements are that one party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act on that belief, and that the other party, influenced thereby, must change his position or do some act to his injury which he otherwise would not have done.
(Citations omitted, internal quotation marks omitted.) Id., 241-42.
Based on the credibility of the testimony of the parties, the court concludes that the plaintiffs testimony is the more credible and believable testimony. From this mere couple of minute conversation between the parties, where the defendant caught the plaintiff by surprise, as she was not anticipating a meeting to take place between the parties, the court finds it hard to believe that any statements exchanged between the parties would rise to the level of inducing the defendant to rely on the belief that he would not be obligated to pay the plaintiff child support.
The Bozzi case also dealt with the defense of laches as follows:
 Laches consists of two elements. First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant. . . . The mere lapse of time does not constitute laches; unless it results in prejudice to the defendant; . . . as where, for example, the defendant is led to change his position with respect to the matter in question.
(Citations omitted; Internal quotations omitted.) Id., 239. CT Page 11032
The court finds that based on the facts presented that the plaintiffs delay in pursuing these motions is not inexcusable due to the defendant's history of moving from place to place subsequent to the dissolution. There was evidence that the defendant resided at various times in Florida, Massachusetts, New Hampshire, and Rhode Island subsequent to 1983. The court concludes the delay in pursing these motions by the plaintiff did not prejudice the defendant.
Waiver is the intentional relinquishment of a known right. Olean v.Treglia, 190 Conn. 756, 773 (1983), Lownds v. Lownds, 41 Conn. Sup. 100,107 (1988).
The court was presented no evidence of an intentional relinquishment by the plaintiff of her right to seek and enforce the court ordered child support payments.
Therefore, the court finds that based on the facts presented and credibility of the evidence, the defendant has failed to sustain his burden on the defenses of equitable estoppel, laches and waiver.
The court must next determine whether or not the defendant is in contempt of this court's orders regarding child support and payment of the second mortgage.
The court must first find that there has been nonpayment of the orders by the defendant. This the defendant concedes.
Next the court must determine if the nonpayment was a wilful violation of the court's orders.
The court takes judicial notice of a letter from the defendant in the court file addressed to the clerk of the court dated September 26, 1983. That letter requests a copy of the judgment be mailed to him in Belchertown, Massachusetts. The court file indicates a copy of the judgment was mailed to the defendant on September 27, 1983.
The defendant had notice of the financial obligations ordered by the court in 1983. The defendant failed to make any payments of the obligations ordered by the court. The court finds that the defendant is in wilful contempt of the court's financial orders to pay the plaintiff child support and to pay the second mortgage obligation.
The court makes the following additional findings: CT Page 11033
1.) The defendant's child support orders of $70/week were not paid from March 25, 1983 to July 25, 1993 when the defendant had his parental rights to the children terminated, which is a period often years and seventeen weeks and amounts to $37,590.00. The court finds this amount to be the total arrearage due on the child support obligation.
2.) The second mortgage obligation ordered by the court to be paid off was in the amount of $7500.00. The plaintiff testified that she satisfied this debt and paid it in October, 1983 by paying $2500.00 and receiving forgiveness by the creditor as to the remainder of the debt. The court finds that the defendant is obligated to pay the plaintiff the $2500.00 she expended plus statutory interest at the rate of 10% per annum for nineteen years which amounts to $4750.00. The total arrearage due on this obligation is $7250.00.
ORDERS:
1.) The child support arrearage is found to be $37,590.00. The court has reviewed the defendant's financial affidavit and finds he does have an ability to make significant payments to retire this arrearage. The court orders that commencing in thirty days of this order the defendant pay to the plaintiff the amount of $250.00 per week until the arrearage is paid in full.
2.) The second mortgage obligation is found to be $7250.00. The defendant is ordered to pay the entire amount in full to the plaintiff within thirty days of this order.
3.) On the finding of the defendant's contempt the court awards attorneys fees and costs. The costs as provided by the plaintiff amount to $323.16 and are awarded to the plaintiff to be paid by the defendant within thirty days of this order.
As to the attorneys fees, the court has reviewed the plaintiffs request for attorney's fees. The court awards as a reasonable attorney's fee the amount of $5,000.00 to be paid by the defendant to the plaintiff within thirty days of this order.
Agati, J. CT Page 11034